UNIVERSITY OF TOLEDO, APPELLEE, *v.* HEINY; ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES ET AL., APPELLANTS.

[Cite as Univ. of Toledo *v.* Heiny (1987), 30 Ohio St. 3d 143.]

(No. 86-1149—Decided May 20, 1987.)

*Spengler, Nathanson, Heyman, McCarthy & Durfee* and *James P. Triona,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Patrick A. Devine* and *John F. Kozlowski,* for appellants.

LOCHER, J. The issue presented in this action is whether the claimant was entitled to unemployment benefits. We hold in the negative.

The resolution of this controversy rests upon an interpretation of R.C. 4141.29(I)(1)(b). This section provides:

"Benefits based on service for an educational institution or an institution of higher education *in other than an instructional, research, or prin-*

*cipal administrative capacity, shall not be paid to any individual for any week of unemployment which begins during the period between two successive academic years or terms of the employing educational institution or institution of higher education* provided the individual performed such services for the educational institution or institution of higher education during the first such academic year or term and, there is a reasonable assurance that such individual will perform such services for any educational institution or institution of higher education in the second of such academic years or terms."[1] (Emphasis added.)

Specifically, we must determine the intent of the legislature in its use of the phrase "academic years or terms" within the overall context of the statute.

Appellants argue in support of the interpretation given by the board in its decision. The board determined that "* * * the claimant's benefits are based on service for an educational institution—an institution of higher education and that she was employed in a position other than an instructional, research or principal administrative capacity. The facts further show that the week ending June 23, 1984, was a week which began between two successive academic terms. The claimant did not receive any reasonable assurance that she would be performing work services for any educational institution during the summer quarter. Thus, the claimant had no reasonable assurance that she would be performing such services for any educational institution in the second of such academic terms. * * * Therefore, the claimant has fulfilled all of the eligibility requirements for filing a valid weekly claim for benefits, and the claim for the week ending June 23, 1984 must be allowed." The trial court upheld this determination, finding that it was not unlawful, unreasonable or against the manifest weight of the evidence pursuant to R.C. 4141.28(O).

We recognize that "* * * it is well-settled that courts, when inter-

---

[1] This section was apparently based upon the Federal Unemployment Tax Act, Section 3301, Title 26, U.S. Code. By adopting and maintaining an unemployment program which closely conforms to the criteria established in the Act, states can qualify for federal subsidies and the employers within the states can qualify for tax credits. The pertinent section of the Federal Unemployment Tax Act is Section 3304(a)(6)(A)(ii), Title 26, U.S. Code, which provides:

"Compensation is payable on the basis of service to which section 3309(a)(1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; except that—

"* * *

"(ii) with respect to services in any other capacity for an educational institution to which section 309(a)(1) applies—

"(I) compensation payable on the basis of such services shall be denied to any individual for any week which commences during a period between 2 successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms * * *."

preting statutes, must give due deference to an administrative interpretation formulated by an agency * * *." *State, ex rel. McLean,* v. *Indus. Comm.* (1986), 25 Ohio St. 3d 90, 92, 25 OBR 141, 143, 495 N.E. 2d 370, 372. However, when an agency's interpretation is unreasonable and thwarts the intent of the legislature, it must be overturned.

We find the interpretation of R.C. 4141.29(I)(1)(b) espoused by the court of appeals to be the proper interpretation and reject the interpretation of the board as unreasonable and unlawful.

Unemployment compensation legislation has been enacted to benefit teachers and non-instructional employees of educational institutions whose employment has terminated at the end of an academic year and whose employment prospects for the ensuing academic year are doubtful. It surely was not enacted to "subsidize the vacation periods of those who know well in advance that they may be laid off for certain specified periods." *Davis* v. *Commonwealth* (1978), 39 Pa. Commw. 146, 147, 394 A. 2d 1320, 1321. " 'In effect what the * * * [employee] in this case [is] requesting is that the government should provide * * * [her] with a full year's income because * * * [she has] agreed to work and be paid for only 44 weeks of each year.' " Citing *Chickey* v. *Commonwealth* (1975), 16 Pa. Commw. 485, 494, 332 A. 2d 853, 857.

In the case *sub judice,* the claimant had been employed by appellee since 1970 and had full knowledge that her services would not be required during the summer months when classes and activities are substantially curtailed. Moreover, the claimant concededly had a reasonable assurance of continued employment. Her employment for the fall of 1984 was never in doubt. She was fully expected to report for work for the 1984-1985 academic year beginning in September 1984. We believe that the legislature intended to deny benefits to such an employee when it enacted R.C. 4141.29(I)(1)(b).

We therefore hold that R.C. 4141.29(I)(1)(b) denies unemployment benefits for the period during the summer months to employees of educational institutions who work in other than instructional, research or principal administrative capacities, when such employees are given reasonable assurance in the current academic year that employment is available for the following academic year. An academic year is generally recognized to consist of the fall, winter and spring sessions of an educational institution. We do not stand alone in this interpretation. See *Dowdy* v. *Dist. of Columbia Dept. of Emp. Serv.* (D.C. App. 1986), 515 A. 2d 399; *Friedlander* v. *Emp. Div.* (1984), 66 Ore. App. 546, 676 P. 2d 314; and *Claim of Lintz* (1982), 89 App. Div. 2d 1038, 454 N.Y. Supp. 2d 346. The claimant herein was employed by an educational institution in other than an instructional, research or principal administrative capacity and was given reasonable assurance at the end of the 1983-1984 academic year that employment was available for the 1984-1985 academic year.

Based on the foregoing, we conclude that the claimant was not enti-

tled to unemployment benefits and, accordingly, affirm the decision of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, J., dissents.

SWEENEY, J., dissenting. Given the remedial nature of the unemployment compensation statutes, I believe that the board of review and the trial court below correctly interpreted R.C. 4141.29(I)(1)(b) so as to allow claimant to receive unemployment benefits during the time she is laid off during the summer. Therefore, I must dissent from the majority's decision holding otherwise.

In the cause *sub judice,* the record reveals that there are part-time bus driver positions available during the summer term, albeit on a reduced scale, but that such positions are regularly filled by students. In view of the applicable law, I believe that the university must either hire the regular bus drivers during the summer or pay unemployment benefits to those employees during the summer term.

In addition, I am troubled by the majority's determination that the academic year at the University of Toledo excludes the summer term. The facts developed below indicate clearly that the university operates on a year-round basis, both academically and administratively. In my view, the majority's exclusion of the summer term from the academic year defies reality. While the appellee-university operates on a somewhat reduced scale during the summer months, the fact remains that the university does offer courses, provide services and grant degrees to students during the summer term. Perhaps during a bygone era a university did close up during the summer; however, today's universities operate on a year-round basis, and the majority's decision to the contrary is, in a word, unpersuasive.

A review of the statute in issue indicates use of the language "academic year *or* term." (Emphasis added.) I believe that a rational construction of this statutory language permits the award of unemployment benefits to the claimant. Since unemployment compensation laws are remedial in nature, a liberal construction of the statutory language mandates the award of benefits to the claimant.

Since I am of the opinion that the board of review and trial court made the correct interpretation of the applicable law, I would reverse the judgment of the court of appeals and reinstate the decision rendered by the Unemployment Compensation Board of Review.