DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the Director of the Ohio Department of Job and Family Services has appealed the judgment of the Lorain County Court of Common Pleas reversing the ruling of the Ohio Unemployment Compensation Review Commission ("Review Commission") granting benefits to claimant Kristie L. Brinkman ("Brinkman"). This Court affirms.
 I {¶ 2} Brinkman, a registered nurse working for the Lorain County Sheriff's Department pursuant to an "intermittent employment contract," filed for unemployment benefits on November 1, 2002, after exhausting her contract commitment of 1,000 hours. Subsequently, the Ohio Department of Job and Family Services ("ODJFS") determined that Brinkman was entitled to benefits. Her employer, the Lorain County Auditor/Sheriff's Department (Appellees) requested reconsideration of the decision and ODJFS affirmed the initial determination. Appellees appealed to the Review Commission and a hearing was held on July 23, 2003.
 {¶ 3} Upon hearing the evidence, the Review Commission awarded Brinkman unemployment compensation benefits. Pursuant to R.C. § 4141.282(H), Appellees appealed to the Lorain County Court of Common Pleas. The trial court reversed the Review Commission's ruling and vacated the award of benefits to Brinkman. ODJFS has timely appealed the trial court's decision, asserting one assignment of error.
 II Assignment of Error Number One
"THE LORAIN COUNTY COMMON PLEAS COURT ERRED IN REVERSING THE REVIEW COMMISSION'S FINDING THAT CLAIMANT WAS DISCHARGED WITHOUT JUST CAUSE AND THUS ELIGIBLE FOR UNEMPLOYMENT BENEFITS WHERE SUCH FINDINGS WERE LAWFUL, REASONABLE AND SUPPORTED BY CREDIBLE EVIDENCE IN THE RECORD."
 {¶ 4} In his sole assignment of error, Appellant has argued that the trial court erred in reversing the Review Commission's decision because its findings were lawful, reasonable and supported by the evidence. Specifically, Appellant has argued that Brinkman was separated from her employment through no fault of her own due to lack of work and therefore, the Review Commission's award of benefits was lawful. We disagree.
 {¶ 5} It has been widely accepted that an "appellate court may only reverse an unemployment compensation eligibility decision by the Review Commission if the decision is unlawful, unreasonable, or against the manifest weight of the evidence."Markovich v. Employers Unity, Inc., 9th Dist. No. 21826, 2004-Ohio-4193, at ¶ 10, citing Tzangas v. Administrator, OhioBur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696. In such cases, this Court is "required to focus on the decision of the Review Commission, rather than that of the common pleas court[.]" Id., citing Barilla v. Ohio Dept. of Job Family Servs., 9th Dist. No. 02CA008012, 2002-Ohio-5425, at ¶ 6.
 {¶ 6} In the case sub judice, the Review Commission based its grant of unemployment benefits on the determination that Brinkman had been separated from employment due to a lack of work. Appellant has echoed that argument in his briefs. Appellees have countered that Brinkman voluntarily entered into a fixed term contract for 1,000 hours per fiscal year. Therefore, Appellees argued, pursuant to O.A.C. 123:1-47-01(44), Brinkman was classified as an intermittent employee and simply not scheduled to work until the start of a new fiscal year. Accordingly, Appellees have argued Brinkman should not be eligible for unemployment benefits for the interim period.
 {¶ 7} In Ohio, an individual must be involuntarily unemployed to be eligible for unemployment compensation. R.C. 4141.29. Appellant has argued that although Brinkman voluntarily entered into a fixed term contract, she was not at fault for the term's expiration and was therefore involuntarily unemployed. To support his position, Appellant has relied on Lexington TownshipTrustees v. Stewart (Mar. 17, 1986), 5th Dist. No. CA-6766, 1986 WL 3925. In Lexington Township Trustees, the Fifth District Court of Appeals held that "[t]he fact that the unemployment is the result of the expiration of a contract for employment is irrelevant[.]" Id. at *2, citing Mathieu v. Dudley (1967),10 Ohio App.2d 169, 174. Both the Seventh and Eighth Districts have adhered to this principle. See Case W. Res. Univ. v. Ohio Unemp.Comp. Rev. Comm., 8th Dist. No. 81773, 2003-Ohio-2047, at ¶ 5.
 {¶ 8} This Court rejects Appellant's arguments and the rulings of the Fifth, Seventh, and Eighth Districts. We cannot agree that parties who knowingly enter into fixed term contracts become "involuntarily unemployed" at the expiration of the fixed term. It is our opinion that as a matter of statutory interpretation and public policy, such a conclusion runs contrary to the intent of the Unemployment Compensation Act ("Act").
 {¶ 9} It has long been held in Ohio that the purpose of the Act is "to enable unfortunate employees, who become and remaininvoluntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Quotations omitted) Irvine v. Unemployment Comp.Bd. of Review (1985), 19 Ohio St.3d 15, 17. Furthermore, the Act was intended to "`provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" Id., quoting Salzl v. Gibson Greeting Cards (1980),61 Ohio St.2d 35, 39.
 {¶ 10} First, we note that being without gainful employment at the conclusion of a fixed term contract does not constitute involuntary unemployment by adverse business conditions. SeeIrvine, 19 Ohio St.3d at 17. Rather, it is simply a position that the claimant put themselves in by agreeing to the fixed term contract, and a position that claimant was aware they would be in at the conclusion of the contract. This Court disagrees with the proposition that just because an individual reaches the extent of their fixed term contract, they necessarily must have been separated because of lack of work. See Case Western Reserve, at ¶ 5 (stating "[i]n Ohio a presumption exists that the employee separated for lack of work").
 {¶ 11} Secondly, we find the overarching policy of the Act is to protect those workers who find themselves without employment through no fault or agreement of their own, and to temporarily provide them with financial assistance until they are able to find adequate employment. See Irvine, 19 Ohio St.3d at 17. Such is not the case with regards to the expiration of fixed term contracts. In the case of an employee who finds herself temporarily without work due to the expiration of a fixed term contract voluntarily entered into, this Court declines to say that such unemployment is through no agreement of her own. In fact, the opposite is true; it is unemployment anticipated and agreed to by the employee, and therefore, we cannot conclude that such an employee is entitled to unemployment benefits.
 {¶ 12} We find it illustrative that Appellant cites Tzangas,Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694 for the proposition that the Act "does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control." Id. at 697. Here, Brinkman had a measure of control over the terms of her employment. She voluntarily entered into an agreement which limited her to 1,000 hours and she has made no argument that she didn't know or understand the terms. That said, she is "no longer the victim of fortune's whims, but is instead directly responsible for [her] own predicament." Id. at 698.
 {¶ 13} Thirdly, we find that the rule adhered to by the Fifth, Seventh, and Eighth Districts is against public policy in that it infringes upon businesses' freedom to contract with a potential employee for fixed term employment. Furthermore, it is foundational that businesses must be allowed to allocate their resources in the way that best serves their business judgment. Granting unemployment benefits to every worker who reaches the culmination of their fixed term contract would eviscerate the purpose and benefit of employers using fixed term contracts. This Court refuses to handcuff business in such a manner, and therefore cannot support the position held by our sister districts.
 {¶ 14} Finally, while it is crucial to the analysis to determine what the purpose of the Act is, we find it equally compelling to determine what the purpose of the Act is not. The Act is not legislation to "subsidize the vacation periods of those who know well in advance that they may be laid off for certain specified periods." (Quotation omitted) Univ. of Toledov. Heiny (1987), 30 Ohio St.3d 143, 146. In the instant matter, Brinkman was fully aware, pursuant to her contract, that she was limited to 1,000 hours per year. Additionally, the contract made it clear that Brinkman was required to complete a 2,000 hour probationary period. That being the case, Brinkman must have been or should have been aware that after completion of her first 1,000 hours, she would have a hiatus before being called back to complete her second 1,000 hour period. Essentially, it appears that Brinkman, through Appellant, is asking the State of Ohio to provide her with supplemental income during a known hiatus period, simply because she chose to enter into an agreement for such employment. See, generally, Id. This Court cannot agree with such a proposition.
 {¶ 15} Regardless of Appellant's argument that the Court adopt the rulings of the Fifth, Seventh and Eighth Districts, we find that the Review Commission's decision granting Brinkman unemployment benefits was unlawful and unreasonable. There is competent and credible evidence in the record that Brinkman was never terminated, nor separated, nor laid off. Additionally, evidence exists that demonstrates that neither lack of work, nor lack of funds precipitated Brinkman's lull in scheduled hours.
 {¶ 16} Captain John Reiber, administrative officer for the Lorain County Sheriff's Department, testified that the jail had sufficient work and sufficient funds to pay registered nurses. Captain Reiber also testified that Brinkman was not "fired" as a result of her reaching the 1,000 hour plateau, she was not separated or terminated, and was not laid off in accordance with Ohio's civil service laws. Additionally, Captain Reiber testified that Brinkman was never removed from the county payroll. Captain Reiber averred that the sole reason Brinkman was removed from the work schedule was she had reached the maximum allowable hours pursuant to her intermittent employment contract.
 {¶ 17} Based on the foregoing, we find that the Review Commission's decision granting Brinkman unemployment benefits because her separation from employment was due to lack of work, was unlawful, unreasonable and against the manifest weight of the evidence. Accordingly, Appellant's sole assignment of error is without merit.
 III {¶ 18} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Baird, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)